UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANTHONY DARNELL GOLDSMITH,

      Plaintiff,

v.                              Case No. 3:13cv287/LC/CJK

JERMAINE, et al.,

      Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This cause is before the court upon plaintiff's fourth amended civil rights complaint filed under 42 U.S.C. § 1983. (Doc. 51). Upon initial review of the complaint, the court found that the facts, as presented, failed to support a viable § 1983 claim against several of the named defendants. The court thus provided plaintiff an opportunity to correct the deficiencies and clarify his allegations in an amended complaint. Upon review of plaintiff's fourth amended complaint, in which plaintiff essentially reiterates the allegations set forth in his initial and amended complaints, the court concludes that this case should be dismissed because plaintiff has not presented a plausible claim for relief against the defendants.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, an inmate with the Florida Department of Corrections ("DOC"), is currently confined at Santa Rosa Correctional Institution ("Santa Rosa CI"). Plaintiff names five defendants in this action: Lieutenant Jermaine, Sergeant W. Martin, Officer Mishoe, Officer B. Count, and Officer O. Carter. (Doc. 51, pp. 2-3). The following matters are taken, often verbatim, from the pending complaint.

Plaintiff initially complains about various corrections officers reading his "privileged mail, opening and reading once it has been sealed and stamped, and even scribble on the envelope." (Doc. 51, p. 12). On one occasion, plaintiff sent a letter to the post office who returned it with "scribble" all over the intended address. Plaintiff also claims many of his informal grievances have gone missing or were destroyed by corrections staff. (Doc. 51, p. 12).

Plaintiff then describes in detail the events he has outlined in his prior complaints. On September 2, 2012, at around 10:20 a.m., Sergeant Steen told plaintiff that defendant Jermaine ordered plaintiff transferred to H dorm. (Doc. 51, p. 13). After arriving at H dorm, plaintiff saw defendants Count and Martin in "the booth" and dropped his property box on the ground "because it was so heavy." Plaintiff then turned around to retrieve his mattress. Defendant Count hit the glass window of the booth and stated, "what the hell wrong [sic] with you, get your ass - around to the back door." (Doc. 51, p. 13). Defendant Count continued to yell profanity at plaintiff and eventually defendant Martin "intervened into the matter with evil intent on his face." (Doc. 51, p. 13). Plaintiff further states that "upon information and belief," an inmate housed in H dorm saw defendants Count and Martin "plant" weapons in plaintiff's tennis shoes. Forty minutes later, plaintiff

turned around to "cuff up" and defendant Martin put the handcuffs "on so tight where plaintiff arm and hands started turning red and started getting numb." (Doc. 51, p. 14). Plaintiff complained that the handcuffs were too tight but defendant Martin ignored the complaints. Defendant Martin then told plaintiff, "[n]igger, if I search you, and find anything sharp on you, I'm going to ram your head into the wall." (Doc. 51, p. 14). Plaintiff then turned his head "to say something to [defendant] Martin." In response, defendant Martin grabbed plaintiff's arm and "slam[med] plaintiff into the wall," which caused plaintiff's face to hit the wall. (Doc. 51, p. 14). Defendant Martin then pulled plaintiff's arm "in a [sic] up right position, like he was trying to break [plaintiff's] arm."

Following this incident, plaintiff was taken to medical. Defendant Jermaine asked defendant Martin what plaintiff was being charged with, to which defendant Martin responded, "disorderly conduct." After medical, plaintiff was taken to confinement and told to "watch yourself with [defendant] Jermaine." On September 6, 2012, defendant Carter brought plaintiff a form to sign and urged him to sign it because he was "in a hurry." Defendant Carter told plaintiff that the report was about "weapon[s]" and plaintiff refused to sign the form. Plaintiff claims he never possessed the weapons and that the weapons were planted in his shoes. Defendant Carter then asked plaintiff who his witnesses were and plaintiff indicated Sergeant Steene. On September 11, 2012, plaintiff appeared at a disciplinary hearing and was found guilty of possessing two weapons, as well as disorderly conduct. Plaintiff received sixty days confinement in total for all three infractions. (Doc. 51, p. 15). On November 9, 2012, after being released from confinement, plaintiff was transferred back to the main housing unit. Plaintiff claims that several inmates in the

H2 and H1 dorms stated that they saw defendant Count plant weapons in plaintiff's tennis shoes.

Beginning on November 10, 2012, defendant Jermaine "harass[ed]" plaintiff. Specifically, defendant Jermaine did not want plaintiff working in H dorm.  Instead, plaintiff was assigned to the kitchen dish room.  During this time, plaintiff went to clean the H dorm bathrooms but an unknown officer told him that defendant Jermaine did not want plaintiff cleaning the bathroom or the officer control room.  (Doc. 51, p. 16).  On January 18, 2013, plaintiff had a "medical callout."  While plaintiff was waiting for his "callout," defendants Mishoe and Jermaine stood by the door and watched him.  The next day, January 19, 2013, at 10:45 a.m., plaintiff was working in the kitchen when he was called down to medical.  Plaintiff walked down to medical and found defendant Mishoe and officer Gilbert waiting for him.  Plaintiff was then told to "cuff up."  When plaintiff asked why, defendant Mishoe told him "we will think of something."  (Doc. 51, p. 16).  Plaintiff was then taken to confinement and given a disciplinary report for disorderly conduct.  Defendant Mishoe told plaintiff that defendant Jermaine ordered Mishoe to write the false disciplinary report.

As a result of the foregoing conduct, plaintiff alleges cruel and unusual punishment and excessive force in violation of his Eighth Amendment rights.  (Doc. 51, p. 17).  Plaintiff also claims the defendants violated his Fourteenth Amendment rights when he was denied the evidence and witness forms and was given a false disciplinary report.  (Doc. 51, p. 18).  In relief, plaintiff requests declaratory relief "that the act's [sic] and omission's described [in the complaint] violated plaintiff's rights under the constitution and laws of the United States," as well as compensatory damages of $50,001 against each defendant jointly and severally.  (Doc. 51, p. 17).

DISCUSSION

Title 28 U.S.C. § 1915 mandates that the district court dismiss a civil rights complaint if the complaint: 1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or 2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.   The court must read plaintiff's *pro se* allegations in a liberal fashion.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).  The court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).   A complaint is also subject to dismissal for failure to state a claim when its allegations, on their face, show that an affirmative defense bars recovery on the claim.  *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*,  549 U.S. 199, 215 (2007) (reiterating that principle).

Fourteenth Amendment Claims

Plaintiff alleges violations of his Fourteenth Amendment rights.  In *Sandin v. Conner*, 515 U.S. 472, 478, 484, 115 S. Ct. 2293, 132 L .Ed. 2d 418 (1995), the

Supreme Court recognized only two instances in which a prisoner may claim a constitutionally protected liberty interest which implicates constitutional due process concerns:  (1) when actions of prison officials have the effect of altering the inmate's term of imprisonment, and (2) where a prison restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Without either the loss of gain-time credits or "atypical" confinement, the Due Process Clause itself affords no protected liberty interest that invokes procedural protections.  *Sandin*, 515 U.S. at 487.  Because plaintiff lost no gain-time, and because placement on disciplinary confinement for sixty days is not the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," 515 U.S. at 486, plaintiff cannot state a plausible claim for violation of his due process rights in connection with his cell placement or disciplinary report.  *See, e.g.*, *Sandin*, 515 U.S. at 486 (holding that thirty-day placement in disciplinary confinement was not atypical or significant enough to trigger due process protection); *Rogers v. Singletary*, 142 F.3d 1252 (11th Cir. 1998) (finding that inmate failed to show deprivation of a protected liberty interest where the inmate was in segregated confinement for two months); *see also, e.g., Smith v. Reg'l Dir. Fla. Dep't. of Corr.*, 368 F. App'x 9, 13 (11th Cir. 2010) (finding that inmate failed to state a claim for a due process violation where he was subjected to confinements of fifteen and thirty days in disciplinary confinement); *Perez v. Humphries*, No. 1:11cv180/RS/GRJ, 2011 WL 6960817, at *3 (N.D. Fla. 2011) (concluding that plaintiff's placement in disciplinary confinement for sixty days did not implicate a liberty interest protected by procedural due process), *Report and Recommendation adopted*, 2012 WL 32566 (N.D. Fla. Jan. 6, 2012).  As to plaintiff's potential claim that the defendants violated

his equal protection rights under the Fourteenth Amendment, plaintiff has put forward no facts even suggesting such a violation. *See Wright v. Butts*, 953 F. Supp. 1352, 1360 (M.D. Ala. 1996) ("In order to prove a violation of the equal protection clause, the plaintiff 'must show that the challenged action was 'taken at least in part' because of, not 'in spite of,' its adverse effects upon an identifiable group.'" (quoting *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979))). Accordingly, plaintiff's Fourteenth Amendment claims should also be dismissed.

Eighth Amendment Claims

"To show a violation of [his] Eighth Amendment rights, plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1319 (11th Cir. 2005) (quotation omitted). "To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 1319-20 (quotations omitted). Simple negligence is not actionable under § 1983, and a plaintiff must allege "a conscious or callous indifference to a prisoner's rights." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982). Some of the ways in which prison officials might avoid Eighth Amendment liability include showing (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) that

"they responded reasonably to the risk, even if the harm ultimately was not averted."
*Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1982-83, 128 L. Ed. 2d 56 (1994).
"The Eighth Amendment's proscription of cruel and unusual punishments . . . governs
prison officials' use of force against convicted inmates." *Campbell v. Sikes*, 169 F.3d
1353, 1374 (11th Cir. 1999).  "To establish a claim for excessive force, the plaintiff
must show that (1) the defendants acted with a malicious and sadistic purpose to
inflict harm and (2) that more than a *de minimis* injury resulted." *McReynolds v.
Alabama Dep't of Youth Servs*., 204 F. App'x 819, 822 (11th Cir. 2006).  The
Supreme Court outlined five factors relevant to ascertaining whether force was used
"maliciously and sadistically for the very purpose of causing harm":  (1) the extent
of the injury; (2) the need for application of force; (3) the relationship between that
need and the amount of force used; (4) any efforts made to temper the severity of a
forceful response; and (5) the extent of the threat to the safety of staff and inmates,
as reasonably perceived by the responsible officials on the basis of facts known to
them.  *Campbell*, 169 F.3d at 1375 (*citing Whitley*, 475 U.S. at 321, 106 S. Ct. at
1085); *see also Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d
156 (1992) (applying the same five factor test set forth in *Whitley* ).

Here, plaintiff's claims do not suggest conduct sufficient to establish a
constitutional violation.  The defendants' alleged conduct, planting weapons in
plaintiff's shoes and writing false disciplinary reports, does not represent a substantial
danger to plaintiff's health or well being necessary for an Eighth Amendment
violation.  The majority of the defendants' alleged actions are best characterized as
mere taunts and harassment, not cruel and unusual punishment implicating Eighth
Amendment concerns.  Plaintiff does claim that defendant Martin put handcuffs on

his wrists so tight that his arms became red and numb.  Such conduct, however, represents only *de minimis* injury.  *See Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (finding that officers who handcuffed plaintiff "too tightly and . . . [left] them that way for an unreasonable amount of time" resulting in "pain from the handcuffs for . . . twenty minutes and . . . skin abrasions," entitled the officers to qualified immunity).  Plaintiff also claims that he was slammed against the wall and that his face hit the wall.  Again, such actions do not represent more than *de minimis* injury, and therefore, do not rise to the level of cruel and unusual punishment under the Eighth Amendment.  *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559-60 (11th Cir. 1993) (pushing handcuffed plaintiff against a wall was *de minimis*); *see also Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1460 (11th Cir. 1997) (determining officers who slammed plaintiff against a wall, kick his legs apart, forced him to raise his hands above his head, and pulled his wallet from his pants was de minimis despite requiring minor medical treatment afterwards); *Nolin v. Isbell*, 207 F.3d 1253, 1255-58 (11th Cir. 2000) (holding that officers who grabbed plaintiff, threw him against a van, searched him, and handcuffed him was *de minimis*).  Importantly, plaintiff does not specify any resulting injuries from the handcuff incident.  Thus, the defendants actions caused, at best, *de minimis* injury, and plaintiff has not stated a viable claim under the Eighth Amendment.

Compensatory Damages

The Prison Litigation Reform Act ("PLRA") provides, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  "[T]he phrase 'Federal civil

action' means all federal claims, including constitutional claims." *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir. 2002). This action, brought by plaintiff under 42 U.S.C. § 1983, is a "Federal civil action" under this definition. It is evident from the face of plaintiff's pleadings that plaintiff was a prisoner at the time he filed this action and that the harm complained of occurred while plaintiff was in custody. Plaintiff's damages claims are based on the fact of the alleged unconstitutional conduct itself (divorced from any mental or emotional injury plaintiff suffered). Plaintiff alleges no physical injury. Plaintiff is therefore prohibited under the PLRA from bringing his compensatory (or a punitive) damages claim. *Harris v. Garner*, 190 F.3d 1279, 1287-88 (11th Cir. 1999) ("*Harris I*"), *vacated in part and reinstated in part on reh'g*, 216 F.3d 970 (11th Cir. 2000) (en banc) ("*Harris II*") (affirming district court's dismissal, under 42 U.S.C. § 1997e(e), of prisoners' compensatory and punitive damages claims arising from prison officials' alleged unconstitutional conduct, where prisoners alleged no physical injury arising from that conduct); *Al-Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011) (holding that "the overall tenor of *Harris* and its progeny, when taken together, unmistakably supports" the conclusion that section 1997e(e) applies to constitutional claims and precludes the recovery of compensatory and punitive damages in the absence of the requisite physical injury).

Accordingly, it is respectfully RECOMMENDED:

1. That plaintiff's claims be DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii), for plaintiff's failure to state a claim upon which relief may be granted.

2. That the clerk be directed to close the file.

At Pensacola, Florida this 3rd day of September, 2014.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).